UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

TORIN HERBERT,               )
                             )
         Petitioner,         )
                             )
    v.                       )   Case No. 4:12-CV-031 JD
                             )
SUPERINTENDENT,              )
                             )
         Respondent.         )

OPINION AND ORDER

Torin Herbert, a *pro se* prisoner, filed a petition pursuant to 28 U.S.C. § 2254 challenging his 2007 drug conviction in Tippecanoe County. [ECF No 1.] For the reasons stated below, the petition is denied.

I.    BACKGROUND

In deciding the petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Herbert's burden to rebut this presumption with clear and convincing evidence. *Id*. On direct appeal, the Indiana Court of Appeals set forth the facts underlying Herbert's conviction as follows:

> [A]round 6:30 p.m. on January 18, 2007, Tippecanoe County Sheriff's Deputy Andrew Heath was patrolling in his marked police cruiser when he noticed a car with windows tinted so darkly that he could not tell "who was in the vehicle or how many"[1] . . . Based on the darkness of the car's window tint, Deputy Heath initiated a traffic stop.

---

[1] INDIANA CODE § 9–19–19–4(c) provides: "A person may not drive a motor vehicle that has a: (1) windshield; (2) side wing; (3) side window that is part of a front door; or (4) rear back window; that is covered by or treated with sunscreening material or is tinted to the extent or manufactured in a way that the occupants of the vehicle cannot be easily identified or recognized through that window from outside the vehicle. However, it is a defense if the sunscreening material applied to those windows has a total solar reflectance of visible light of not more than twenty-five percent (25%) as measured on the nonfilm side and light transmittance of at least thirty percent (30%) in the visible light range."

> Deputy Heath shone his spotlight on the car. As he approached the driver's side, he "still couldn't tell who was in the vehicle." Deputy Heath asked Herbert, the driver, to roll down the rear window so that he "could tell if anybody was on the inside of the vehicle at the rear seat just so [he] could see what that person was doing." Deputy Heath asked Herbert for his driver's license and registration and asked the two passengers for identification. Deputy Heath asked all three persons to exit the car and requested the assistance of a narcotics detection canine. Officer Albert Demello and his canine responded to Deputy Heath's request.
>
> Deputy Heath asked Herbert if he had any "dangerous weapons on him." Herbert said no. Deputy Heath then asked Herbert if he had "any illegal narcotics or contraband in the vehicle[.]" Herbert initially said no, but once Deputy Heath advised him that a narcotics detection canine "would be walked around his vehicle[,]" Herbert admitted that "there was a little bit of weed under the driver's seat." Officer Demello's canine indicated the presence of contraband on the driver's side of the car. Officer Demello reached under the driver's seat and found a bag containing 108.27 grams of marijuana. Herbert was arrested and transported to the county jail, where an officer strip-searched him and found a bag containing 17.7 grams of cocaine between his buttocks.

*Herbert v. State*, No. 79A04-0712-CR-748, slip op. at 2-3 (Ind. App. Ct. Jul. 25, 2008) (internal citations omitted). Herbert was charged with dealing in cocaine, dealing in marijuana, and maintaining a common nuisance. *Id.* at 3. He was convicted by a jury on all counts, and sentenced to an aggregate prison term of 33 years. *Id.* at 4.

He appealed, raising two arguments: (1) the trial court erred in admitting evidence seized from the traffic stop; and (2) the trial court erred in excluding his proposed witness, who would have testified that his tinted windows did not violate Indiana law. [ECF No. 4-5.] The Indiana Court of Appeals affirmed his conviction in all respects. *Herbert*, No. 79A04-0712-CR-748, slip op. at 4-10. He sought transfer to the Indiana Supreme Court, raising one issue: whether the search and seizure was unlawful because the officer improperly questioned him about narcotics during a routine traffic stop. [ECF No. 4-8.] The Indiana Supreme Court denied transfer. [ECF No. 4-3 at 4.]

Thereafter, Herbert filed a post-conviction petition in state court asserting ineffective assistance of counsel and other claims. [ECF No. 4-9 at 33-34.] Following a hearing at which

Herbert was represented by counsel, the petition was granted in part and his sentence reduced, but was denied in all other respects.[2] [*Id.* at 33-40.] Herbert appealed, raising one claim: that his trial counsel was ineffective in failing to challenge the traffic stop on the ground that the canine search unduly extended the length of the stop. [ECF No. 4-9 at 9-11.] The Indiana Court of Appeals concluded that Herbert did not establish a violation of his right to counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), because counsel's decision not to pursue this argument was a reasonable exercise of trial strategy. *Herbert v. State*, No. 79A02-1010-PC-1080, slip op. at 4-8 (Ind. Ct. App. Sept. 6, 2011). Herbert sought transfer to the Indiana Supreme Court, asserting the same ineffective assistance claim. [ECF No. 4-12.] The Indiana Supreme Court denied transfer. [ECF No. 4-4 at 4.]

Herbert then filed this federal petition, asserting three claims: (1) his Fourth Amendment rights were violated in connection with the traffic stop; (2) his due process rights were violated when he was denied the opportunity to call a witness to testify that his tinted windows did not violate Indiana law; and (3) his trial counsel was ineffective in failing to argue that the stop was unduly prolonged by the officers questioning and subsequent canine search. [ECF No. 1.]

II.     ANALYSIS

Herbert's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or

---

[2] The trial court determined (and the state conceded) that the court had erred in running the three-year sentence on the common nuisance conviction consecutive to the other sentences, and it adjusted Herbert's sentence accordingly. [ECF No. 4-9 at 38.]

3

treaties of the United States." 28 U.S.C. § 2254(a). The Court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the court arrives at a conclusion opposite to that reached by the Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, —U.S.—, 131 S. Ct. 770, 786 (2011).

Before considering the merits of a claim, however, the Court must ensure that the state courts have been given the first opportunity to address and correct violations of their prisoner's federal

rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review, either on direct appeal or on post-conviction review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. This includes seeking discretionary review in the state court of last resort. *Boerckel*, 526 U.S. at 848. Under the procedural default doctrine, a federal court is precluded from reaching the merits of a claim when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

A habeas petitioner can overcome a procedural default by showing both cause for the default and a resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" which prevented the petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Routine matters such as a petitioner's *pro se* status or lack of knowledge of the law do not establish cause to excuse a procedural default. *See Smith v. McKee*, 598 F.3d 374, 385 (7th Cir. 2010) (petitioner's *pro se* status did not excuse his procedural default); *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003) (petitioner's *pro se* status and lack of education did not excuse his procedural default). Prejudice is established by showing that "the violation of the petitioner's federal rights worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Thompkins v. Pfister,* 698 F.3d 976, 987 (7th Cir. 2012) (internal citation and quotation marks omitted)

A habeas petitioner can also overcome a procedural default by establishing that the Court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v.*

5

*Bell*, 547 U.S. 518, 536 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's[.]" *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original). Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To support a claim of actual innocence the petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," and must show that "in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 537. This is a difficult standard to meet, and such claims are "rarely successful." *Schlup*, 513 U.S. at 324. With these principles in mind, the Court turns to the petition.

In claim one, Herbert argues that his Fourth Amendment rights were violated in connection with the traffic stop. [ECF No. 1 at 5.] The state argues that this claim is not cognizable in light of *Stone v. Powell*, 428 U.S. 465 (1976). [ECF No. 4 at 7.] The Court agrees. In *Stone*, the U.S. Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. The exclusionary rule, which requires the suppression of evidence obtained in violation of the Fourth Amendment, is not a "personal constitutional right" of the accused; rather, "it is a judicially created means of effectuating the rights secured by the Fourth Amendment." *Brock v. United States*, 573 F.3d 497, 499 (7th Cir. 2009). The rule was intended to deter violations of the Fourth Amendment by "removing the incentive to disregard it," but it has attendant costs, since it

"deflects the truthfinding process and often frees the guilty." *Stone*, 428 U.S. at 484, 490. Thus, the rule "has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* at 486-87. In habeas proceedings the "contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 495.

Therefore, federal habeas courts are barred from reviewing Fourth Amendment claims that were fully and fairly litigated in state court. *Id.* at 494-95; *see also Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005) ("[F]ederal courts hearing collateral attacks under § 2254 may not enforce the exclusionary rule unless the state judiciary denied the defendant a full an fair opportunity to contest the search or seizure."). A habeas petitioner had a full and fair opportunity to litigate a Fourth Amendment claim if: (1) he apprised the state court of his Fourth Amendment claim along with the factual basis for that claim; and (2) the state court thoroughly analyzed the facts and looked to the appropriate body of decisional law to resolve the claim. *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005); *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002).

A review of the state proceedings demonstrates that Herbert had a full and fair opportunity to contest the search and seizure, and he does not argue otherwise. Herbert challenged the traffic stop both before and during trial, and on appellate review. *See Herbert*, No. No. 79A04-0712-CR-748, slip op. at 3-4. He was represented by counsel throughout these proceedings, had an opportunity for an evidentiary hearing in the trial court, and filed an appellate brief fully outlining his claim. [*See* ECF No. 4-5; ECF No. 6, Post-Conviction Record ("PCR") Ex. 1 at 1-22, 29, 133-34.] The Indiana Court of Appeals issued an opinion thoroughly analyzing the facts pertaining to the traffic stop and looking to applicable law to resolve Herbert's claim. *See Herbert*, No. 79A04-0712-CR-748, slip op. at 4-10.

In his traverse, Herbert does not argue that he was denied an opportunity to litigate a Fourth Amendment claim in state court, nor does he directly address *Stone;* instead he focuses on the merits of his claim. [ECF No. 12 at 8-13.] Although Herbert clearly disagrees with the result reached by the Indiana courts, the opportunity for full and fair litigation of a Fourth Amendment claim "guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir. 2003). Unless there has been a "subversion of the hearing process," a federal habeas court "will not examine whether the judge got the decision right." *Id.* at 531. Herbert has not argued or demonstrated that there was a subversion of the hearing process in state court, and instead he asks this Court "to disagree with the state courts' decision, a path that *Stone* closes." *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005). Accordingly, this claim must be denied.

In claim two, Herbert asserts that the trial court violated his rights by denying his proposed witness, who would have testified that his tinted windows did not violate state law. [ECF No. 1 at 7.] The state argues that the claim is procedurally defaulted. [ECF No. 4 at 4-7.] The Court agrees. Although Herbert asserted this claim before the Indiana Court of Appeals, he did not include the claim in his petition to transfer filed with the Indiana Supreme Court. [ECF No. 4-12.] His failure to present this claim to the Indiana Supreme Court constitutes a procedural default. *Boerckel*, 526 U.S. at 848.

Herbert appears to argue that the Court's refusal to review this claim on the merits will result in a fundamental miscarriage of justice. [ECF No. 12.] This is a difficult standard to meet, and it requires Herbert to prove that he is factually innocent of the offenses of which he was convicted, not just that his conviction is legally deficient in some way. *Bousley*, 523 U.S. at 623. He must support his claim of factual innocence with "new reliable evidence," and must show that "in light of new

8

evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 537. Herbert does not satisfy this demanding standard. He has not come forward with new evidence—or for that matter *any* evidence—to establish that he is factually innocent of the drug offenses of which he was convicted. Rather, his argument focuses on whether he committed a traffic offense involving tinted windows, but as the Indiana Court of Appeals noted, he was never charged with committing that offense. *Herbert*, No. 79A04-0712-CR-748, slip op. at 10. Accordingly, his argument is unavailing. He has not provided any other grounds for excusing his procedural default and, therefore, this claim cannot be reached on the merits.

In his final claim, Herbert argues that he received ineffective assistance from his trial counsel. [ECF No. 1 at 8.] Under the Sixth Amendment, a criminal defendant is entitled to "effective assistance of counsel——that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 558 U.S. 4, 16 (2009). To prevail on such a claim, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices[.]" *Richter*, 131 S. Ct. at 788. The Court's review of counsel's performance is deferential, and there is an added layer of deference when the claim is raised in a habeas proceeding; the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004); *see also Yu Tian Li v. United States*, 648 F.3d 524, 527-28 (7th Cir. 2011) ("To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, our review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance."). Furthermore, the Court must "evaluate [counsel's] performance as a whole rather than focus on a single failing or oversight, " *Ebert v. Gaetz*, 610 F.3d 404, 412 (7th Cir. 2010), and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, —U.S.—, 131 S. Ct. 733, 741 (2011).

On the prejudice prong, the petitioner must show there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*. at 693. In assessing prejudice under *Strickland*, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel had acted differently." *Richter*, 131 S. Ct. at 791. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 792. Where it is expedient to do so, the Court may resolve an ineffective assistance claim solely on the prejudice prong, because if the petitioner cannot establish prejudice, there is no need to "grade" counsel's performance. *Strickland*, 466 U.S. at 697. Where the underlying argument the petitioner wanted counsel to raise lacks merit, the claim cannot succeed, because "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

Here, Herbert claims that his trial counsel was deficient in failing to challenge the traffic stop on the ground that it was unduly prolonged by the officer's questions about narcotics and the subsequent canine search. [ECF No. 1 at 5.] In rejecting this claim on post-conviction review, the Indiana Court of Appeals properly identified *Strickland* as the governing standard. *See Herbert*, No. 79A02-1010-PC-1080, slip op. at 5. The court determined that Herbert failed to establish that his

10

counsel was deficient on this ground. *Id.* at 5-7. Based on the record, this was not an unreasonable application of *Strickland*.

The record shows that Herbert's counsel was fully aware of the facts and legal issues surrounding the traffic stop. He challenged the stop in a pre-trial motion to dismiss and motion to suppress; however, he chose to argue that the officer had no basis to pull Herbert over in the first place because his windows did not violate Indiana law. [*See* ECF No. 6, Appellant's Appx. at 61-65; PCR Ex. 1 at 1-22.] A hearing was held on the motion prior to trial, and the transcript reflects that counsel was prepared and well-versed in the relevant facts. [PCR Ex. 1 at 1-22.] Ultimately the motion was denied, but counsel made two standing objections to the admission of evidence in order to preserve the issue for appeal. [PCR Ex. 1 at 29, 133-34.] A review of the remainder of the trial transcript reflects that counsel was well-prepared throughout the proceedings, and that he actively participated in jury selection, raised many objections during the state's presentation of witnesses and evidence, thoroughly questioned the police officers involved, filed a motion for a directed verdict, presented mitigating evidence at sentencing, and otherwise argued vigorously on Herbert's behalf.[3] [PCR Ex. 1 at 25-340.]

For unknown reasons, Herbert did not call his trial counsel as a witness at his post-conviction hearing (nor is there anything in the record to indicate he was unavailable), so there is no evidence in the record regarding the reasons behind his decisions. [*See* PCR Hearing Tr. at 1-61.] Herbert did present testimony from Bruce Graham, an appellate public defender in Tippecanoe County, who testified that *he* would have raised the issue of the stop being unduly prolonged by the canine search. [*Id.* at 4-49.] In essence, Graham felt it would have been best for counsel to challenge the stop based

---

[3] The trial court characterized Herbert's counsel as "a very experienced trial lawyer" who "doesn't miss anything." [PCR Ex. 1 at 123.]

11

on the canine search, not on the window tint issue that he raised. [*Id.* at 22-28.] Be that as it may, the question is not whether another attorney would have made the argument or even whether "best practices" dictated doing so, but only whether counsel's performance fell below an objective standard of reasonableness. *Richter*, 131 S. Ct. at 788. Counsel was not required to assert every conceivable argument, and instead was afforded wide discretion to select among those arguments which in his professional judgment had the best likelihood of success. *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (observing that counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success. . . "); *Yu Tian Li*, 648 F.3d at 528 (describing significant deference afforded to attorney's strategic decisions). Based on the record, Herbert has failed to overcome the presumption that counsel's actions were a reasonable exercise of trial strategy. *See Davis*, 388 F.3d at 1059.

Herbert has also not made the requisite showing of prejudice, given that his underlying argument had little likelihood of success. *See Ebert*, 610 F.3d at 411 (habeas petitioner claiming that counsel was deficient in failing to raise Fourth Amendment claim must show that "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.").

The Fourth Amendment permits an officer effecting a traffic stop to ask the defendant questions unrelated to the initial purpose of the stop and to conduct a canine sweep, so long as the stop does not become unduly prolonged. *Illinois v. Caballes*, 543 U.S. 405 (2005); *United States v. Martin*, 422 F.3d 597, 601 (7th Cir. 2005); *United States v. Carpenter*, 406 F.3d 915, 916 (7th Cir. 2005). Here, the record reflects that the officer asked Herbert a few questions and then called the canine unit, which arrived approximately five minutes after he had been pulled over. [*See* PCR Ex. 1 at 127, 187, 200.] Shortly after the arrival of the canine unit, and before the sweep even occurred,

Herbert admitted to the officer that he had marijuana in his vehicle. [*Id.* at 135.] Under these circumstances, it is unlikely the drug evidence would have been suppressed even if counsel had challenged the stop on this ground. *See Martin*, 422 F.3d at 602 (delay of 20 minutes not unreasonable under the Fourth Amendment); *Carpenter*, 406 F.3d at 916 (no Fourth Amendment violation where canine unit arrived within five minutes of traffic stop).

Indeed, at the post-conviction hearing, Graham testified that he did not know whether the stop had been unduly prolonged, or whether a challenge on this ground would have been successful, because he was not familiar with the exact time line of events. [PCR Tr. at 30-33.] He also acknowledged that once Herbert admitted to the officer that there were drugs in the car, police had probable cause to conduct a search. [*Id.* at 35-37.] Based on the record, Herbert has not established that the state court unreasonably adjudicated his ineffective assistance claim, and accordingly, his claim is denied.[4]

Pursuant to RULE 11 of the RULES GOVERNING SECTION 2254 CASES, the Court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v.*

---

[4] At the end of his traverse, Herbert asks in general terms that he be afforded an evidentiary hearing, without specifying which claim his request pertains to or what facts he seeks to develop. [ECF No. 12 at 13.] The Court's authority to hold an evidentiary hearing in a Section 2254 proceeding is significantly limited, and applies only in situations where the petitioner has been unfairly precluded from developing his claim in state court. *See* 28 U.S.C. § 2254(e)(2); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400-02 (2011); *Tolliver v. Pollard*, 688 F.3d 853, 859-60 (7th Cir. 2012). There is no indication that occurred here. Furthermore, a habeas petitioner is entitled to a hearing to develop his claims only when his factual allegations "if true, would entitle [him] to federal habeas relief." *Schiro v. Landrigan*, 550 U.S. 465, 474 (2007). Where, as here, "the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

*McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Herbert's first claim is barred by *Stone*, his second claim is procedurally defaulted, and he has not established that the state courts unreasonably adjudicated his third claim. The Court finds no basis to conclude that jurists of reason could debate the outcome of the petition or find a reason to encourage Herbert to proceed further. Accordingly, the Court declines to issue Herbert a certificate of appealability.

III.    CONCLUSION

For the reasons set forth above, the petition [ECF No. 1] is DENIED and the petitioner is DENIED a certificate of appealability.

SO ORDERED.

ENTERED: February 14, 2013

       /s/ JON E. DEGUILIO
Judge
United States District Court